UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


KURT AARON DICKSON,

                    Petitioner,

v.                                    Case No. 3:12-cv-1125-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Kurt Aaron Dickson, an inmate of the Florida penal system, initiated this action on October 16, 2012, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254 and Memorandum of Law and Supporting Grounds for Habeas Corpus Relief (Memorandum; Doc. 2). In the Petition, Dickson challenges a 2002 state court (Duval County, Florida) judgment of conviction for aggravated battery on a law enforcement officer, resisting an officer with violence, possession of a firearm by a convicted felon, possession of a controlled substance, and possession of drug paraphernalia. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show Cause (Response; Doc. 13) with exhibits (Resp. Ex.). On November 19, 2012, the Court entered an

Order to Show Cause and Notice to Petitioner (Doc. 8), admonishing Dickson regarding his obligations and giving Dickson a time frame in which to submit a reply. Dickson submitted a brief in reply. See Petitioner's Traverse/Reply (Reply; Doc. 15). This case is ripe for review.

## II. Procedural History

On July 13, 2001, in Case No. 16-2001-CF-7761, the State of Florida charged Dickson with aggravated battery on a law enforcement officer (count one), resisting an officer with violence (count two), possession of a firearm by a convicted felon (count three), possession of a controlled substance (count four), and possession of controlled substance paraphernalia (count five). Resp. Ex. A at 9-10, Information. Dickson, with the benefit of counsel, filed a motion to suppress physical evidence, see id. at 27-157, and the trial court denied the motion on December 4, 2001, see id. at 158.

In December 2001, Dickson proceeded to trial, see Resp. Ex. B, Transcript of the Jury Trial (Tr.), at the conclusion of which, on December 4, 2001, a jury found him guilty of aggravated battery on a law enforcement officer (count one), resisting an officer with violence (count two), possession of a firearm by a convicted felon (count three), possession of a controlled substance (count four), and possession of drug paraphernalia (count five). Id. at 243-44; Resp. Ex. A at 190-94, Verdicts. On January 3, 2002, the court

sentenced Dickson to a term of imprisonment of fifty years for count one with a minimum mandatory five-year term; a term of imprisonment of ten years for count two; a term of imprisonment of fifteen years for count three with a minimum mandatory three-year term; a term of imprisonment of five years for count four; and a one-year term of imprisonment for count five, such terms to run concurrently with each other. Resp. Exs. A at 217-26; C at 292-94.

On direct appeal, Dickson, with the benefit of counsel, filed an initial brief, arguing that the circuit court erred when it denied: his motion to correct illegal sentence (ground one) and motion to suppress (ground two). Resp. Ex. D. The State filed an answer brief, <u>see</u> Resp. Ex. E, and Dickson filed a reply brief, <u>see</u> Resp. Ex. F. On September 19, 2005, the appellate court affirmed Dickson's convictions per curiam, vacated his sentences, and remanded the case "for resentencing before a different judge." <u>Dickson v. State</u>, 910 So.2d 930 (Fla. 1st DCA 2005); Resp. Ex. G. In doing so, the First District Court of Appeal stated, in pertinent part:

> Reflecting his understandable frustration with insensitive and ill-advised remarks made by the appellant prior to his sentencing, the trial judge unfortunately made remarks that placed his impartiality in doubt. In light of these remarks, the appellant's sentences must be vacated.

<u>Id.</u> The mandate issued on October 6, 2005. <u>See</u> http://www.1dca.org, <u>Kurt Aaron Dickson v. State of Florida</u>, No. 1D02-0325.

On March 9, 2006, a different sentencing judge sentenced Dickson to a term of imprisonment of fifty years with a minimum mandatory five-year term (count one); a term of imprisonment of ten years (count two); a term of imprisonment of fifteen years with a minimum mandatory three-year term (count three); a term of imprisonment of five years (count four); and a one-year term of jail time (count five), all terms to run concurrently, and counts one, two and three to be served as a habitual felony offender (HFO). Resp. Ex. H, Transcript of the Sentencing Proceeding, at 334-35; Judgment at 278-91. On direct appeal, Dickson, with the benefit of counsel, filed an initial brief, arguing that the court's imposition of an HFO sentence violated Apprendi v. New Jersey,[1] Shepard v. United States,[2] Crawford v. Washington,[3] and Davis v. Washington[4] (grounds one and four); the trial court erred when it admitted hearsay at the sentencing proceeding (ground two); and the evidence was not legally sufficient to establish Dickson's qualifications as an HFO (ground three). Resp. Ex. I. The State filed an answer brief, see Resp. Ex. J, and Dickson filed a reply brief, see Resp. Ex. K. On July 13, 2007, the appellate court affirmed Dickson's convictions and sentences per curiam without

---

[1] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[2] Shepard v. United States, 544 U.S. 13 (2005).

[3] Crawford v. Washington, 541 U.S. 36 (2004).

[4] Davis v. Washington, 547 U.S. 813 (2006).

4

issuing a written opinion, see Dickson v. State, 961 So.2d 937 (Fla. 1st DCA 2007); Resp. Ex. L; and later denied Dickson's motion for rehearing on August 16, 2007, see Resp. Exs. M; N. The mandate issued on September 4, 2007. See http://www.1dca.org, Kurt Dickson v. State of Florida, No. 1D06-1729.

On October 23, 2007, Dickson filed a pro se motion to reduce, modify and mitigate sentence under Florida Rule of Criminal Procedure 3.800(c). Resp. Ex. O. The court denied the motion on October 31, 2007. Resp. Ex. P. On January 23, 2008, Dickson filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. Q. However, he voluntarily dismissed that motion on March 3, 2008. Resp. Ex. R.

On September 2, 2008, Dickson filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. R at 1-29. On May 27, 2009, with the benefit of counsel, Dickson filed an amended motion. Id. at 30-38. In his request for post-conviction relief, Dickson asserted that counsel (Craig J. Martin) was ineffective because he failed to: move to sever the possession of a firearm by a convicted felon charge (ground one); move to sever the charges involving the assault (counts one and two) from the drug charges (ground two); renew his motion to suppress physical evidence at trial, including the cocaine, firearms, and paraphernalia found in the backpack (ground three); conduct an adequate voir dire of the jury (ground four);

adequately consult with Dickson before stipulating that the substance found in the backpack was cocaine (ground five); properly request jury instructions on justifiable use of non-deadly force and mens rea (ground six); adequately prepare for and argue his motions for judgment of acquittal (ground seven); adequately advise Dickson about whether he should testify at trial or not (ground eight); recognize the consequences of his actions when he introduced a police report into evidence which contradicted Dickson's trial testimony (ground nine); and properly investigate issues related to the victim's injuries (ground ten). Id. at 30-34. Additionally, he asserted that the cumulative effect of trial counsel's errors resulted in the denial of Dickson's rights to a fair trial and due process of law (ground eleven). Id. at 34. The State responded. Id. at 40-42.

On November 23, 2009, the post-conviction court held an evidentiary hearing, at which Mr. Craig J. Martin (Dickson's defense counsel) and Dickson testified. Resp. Ex. T, Transcript of the Evidentiary Hearing (EH Tr.). At the evidentiary hearing, Assistant Public Defender Ann Finnell represented Dickson. After the evidentiary hearing, Dickson, with the benefit of counsel, filed a memorandum in support of his amended motion, see Resp. Ex. S at 43-50, and the State filed a summary of argument, see id. at 51-52. On January 25, 2011, the post-conviction court granted the Rule 3.850 motion as to ground nine. Id. at 53-56. In doing so, the

6

court vacated and set aside Dickson's convictions on counts one and two. Id. at 56. As to counts three, four and five and the remaining grounds, the court denied the motion. Id. at 56-58.

On February 11, 2011, the State filed a notice of appeal, and Dickson filed a notice of cross-appeal on February 15, 2011. See http://www.1dca.org, State of Florida v. Kurt Aaron Dickson, No. 1D11-742. The State filed an initial brief, see Resp. Ex. U, and Dickson, with the benefit of counsel, filed an answer brief, see Resp. Ex. V. Dickson filed a Notice of Voluntary Dismissal of Cross-Appeal on February 28, 2012, see Resp. Ex. W, and the court dismissed his cross-appeal the next day, see http://www.1dca.org, N. 1D11-742. On May 4, 2012, in a written opinion, the appellate court reversed the post-conviction court's partial granting of Dickson's motion and its vacating of his convictions for aggravated battery on a law enforcement officer and resisting an officer with violence. State v. Dickson, 89 So.3d 277 (Fla. 1st DCA 2012); Resp. Ex. X. The court denied Dickson's motion for rehearing on June 15, 2012. Resp. Ex. Y. The mandate issued on July 3, 2012. Resp. Ex. Z.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d); Response at 25-26; Reply at 1.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Dickson's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

8

> determined by the Supreme Court of
> the United States; or
>
> (2) resulted in a decision that
> was based on an unreasonable
> determination of the facts in light
> of the evidence presented in the
> State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S.Ct. 770, 784 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has
> adjudicated the petitioner's claim on the
> merits, a federal court may not grant habeas
> relief unless the state court's decision was
> "contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States," 28 U.S.C. § 2254(d)(1), or
> "was based on an unreasonable determination of
> the facts in light of the evidence presented
> in the State court proceeding," id. §
> 2254(d)(2). "Under § 2254(d)(1)'s 'contrary
> to' clause, we grant relief only 'if the state
> court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case
> differently than [the Supreme Court] has on a
> set of materially indistinguishable facts.'"
> Jones v. GDCP Warden, 753 F.3d 1171, 1182
> (11th Cir. 2014) (quoting Williams v. Taylor,
> 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d
> 389 (2000)). "Under § 2254(d)(1)'s
> 'unreasonable application' clause, we grant

relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must

10

> establish that no fairminded jurist would have
> reached the Florida court's conclusion. <u>See</u>
> <u>Richter</u>, 131 S.Ct. at 786-87; <u>Holsey v.</u>
> <u>Warden, Ga. Diagnostic Prison</u>, 694 F.3d 1230,
> 1257-58 (11th Cir. 2012). "If this standard is
> difficult to meet, that is because it was
> meant to be." <u>Richter</u>, 131 S.Ct. at 786....

<u>Taylor v. Sec'y, Fla. Dep't of Corr.</u>, 760 F.3d 1284, 1293-94 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2323 (2015); <u>see also</u> <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1230 (11th Cir. 2014), <u>cert</u>. <u>denied</u>, 135 S.Ct. 2126 (2015).

For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Hittson</u>, 759 F.3d at 1232 ("[T]here is no AEDPA requirement that a state court explain its reasons for rejecting a claim[.]"); <u>Richter</u>, 131 S.Ct. at 785 (holding that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the extent that Dickson's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.

838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S.Ct. 2546; Sykes,[6] supra, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the

---

[5] Coleman v. Thompson, 501 U.S. 722 (1991).

[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. <u>Maples v.</u>

<u>Thomas</u>, 132 S.Ct. 912, 922 (2012) (citations omitted); <u>In Re Davis</u>,

565 F.3d 810, 821 (11th Cir. 2009) (citation omitted). In order for

Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477
> U.S. at 488, 106 S.Ct. 2639). Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." <u>Id.</u>
> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106
> S.Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In <u>Martinez</u>, the Supreme Court modified the general rule in

<u>Coleman</u>[7] to expand the "cause" that may excuse a procedural

---

[7] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" <u>Maples v. Thomas</u>, 132 S.Ct. 912, 922 (citing <u>Coleman</u>, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of

default. Martinez, 132 S.Ct. at 1315. "Importantly, the Martinez Court expressly limited its holding to attorney errors in initial-review collateral proceedings . . . ." Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014), cert. denied, 135 S.Ct. 106 (2014).

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. Miller-El v. Cockrell, 537

---

negligent conduct on the part of his agent. Coleman, 501 U.S. at 753-54. In Coleman, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. Id. at 755. However, the Martinez Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

> U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931
> (2003) (describing standards for certificates
> of appealability to issue).

Id. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.[8] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

---

[8] Murray v. Carrier, 477 U.S. 478 (1986).

presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had

> some conceivable effect on the outcome of the
> proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id.</u>, at 687, 104
> S.Ct. 2052.

<u>Richter</u>, 131 S.Ct. at 787-88. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." <u>Id.</u>
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the <u>Strickland</u> standard was incorrect but

> whether that determination was unreasonable -
> a substantially higher threshold." <u>Knowles v.
> Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal court
> may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

### VIII. Findings of Fact and Conclusions of Law

### A. Ground 1(a)

As ground 1(a), Dickson asserts that counsel (Craig J. Martin) was ineffective because the police report he introduced into evidence to impeach a witness contained inculpatory hearsay from a non-testifying witness. <u>See</u> Memorandum at 3-4. Dickson raised the ineffectiveness claim in his Rule 3.850 motion, as ground nine, in state court, and the circuit court held an evidentiary hearing[9]

---

[9] At the 2009 state court evidentiary hearing, Mr. Martin testified that the Florida Supreme Court suspended him from the practice of law in 2004 (after Dickson's 2001 trial), and that his Florida Bar status was inactive, but he was eligible for

concerning this issue. The court granted Dickson's Rule 3.850 motion as to ground nine, and vacated his convictions for aggravated battery on a law enforcement officer and resisting an officer with violence (counts one and two). Resp. Ex. S at 53-58.

On the State's appeal, the appellate court reversed the post-conviction court's granting of Dickson's motion as to this claim. Dickson, 89 So.3d 277; Resp. Ex. X. In doing so, the court summarized the trial testimony, and ultimately denied the post-conviction motion with respect to this claim, stating in pertinent part:

> The State appeals the trial court's order granting appellant's postconviction motion in part and vacating appellant's convictions for aggravated battery on a law enforcement officer and resisting an officer with violence. Because we find no prejudice was established, we reverse for reinstatement of the convictions.

> At trial, the State presented the testimony of four witnesses. The injured officer testified that while she was running after appellant during an attempted stop, appellant turned and began punching her in the face.[10] The officer

---

reinstatement. See EH Tr. at 6-7. On cross-examination, he acknowledged that one of the reasons for the Florida Bar suspension was he failed to file a timely notice of appeal in Dickson's case. See id. at 17-18. The Court takes judicial notice of Mr. Martin's thirty-month suspension. See id. at 7; The Florida Bar v. Martin, 879 So.2d 625 (Fla. 2004); The Florida Bar v. Martin, 869 So.2d 541 (Fla. 2004).

[10] See Tr. at 109, lines 3-4 ("I believe that was around the first time he punched me in the face."), lines 14-16 ("The defendant was continuously punching me in the face with his fist, I don't know how many times but I just remember being continuously

reported appellant hit her several times in the face, got on top of her, continued to hit her in the face, and then threw her onto the hood of a car, after which she fell, hitting her head hard on the concrete.[11] As a result of this altercation, the officer underwent several surgeries, had a plate implanted in her head, and suffered daily from headaches.[12] Photographs of her injuries were published to the jury.[13]

A 15-year-old eyewitness corroborated the officer's version of events and further stated that he saw appellant "beat [the officer] bad mostly just with his fist."[14] In addition, two officers who spoke with appellant following the incident testified that appellant admitted to hitting the officer several times.[15] In contrast, appellant testified at trial that he did not hit the officer intentionally. However, appellant conceded he pushed at the officer to get away, and they fell to the ground together where they engaged in a scuffle.[16]

---

punched."), lines 17-18 ("[H]e kept pounding my face and I remember trying to radio for help.").

[11] See Tr. at 109-12.

[12] See Tr. at 113-14.

[13] See Tr. at 114-16.

[14] See Tr. at 131; 132 ("Yeah, so you could see he was hitting her in the head.").

[15] See Tr. at 140, lines 21-24 ("At that point [Dickson] was in the back seat of the car, he stated he knew the officer was all right, he saw it on the news, and he just punched her a couple of times and he was just trying to get away."), 159, lines 1-2 ("He stated he wasn't trying to hurt her and then he stated he only hit her two or three times.").

[16] See Tr. at 183, 190 ("I admit to hitting her.").

During trial, appellant's counsel,[17] in an attempt to refresh the recollection of one of the State's witnesses, referred to a portion of the police report in front of the jury which stated eye-witnesses had seen the officer and appellant fall down a flight of stairs during the incident.[18] The State objected to the partial introduction of the report and invited defense counsel to introduce the report in its entirety. Defense counsel agreed, and the report was introduced. In addition to the reference to eye-witness testimony that the officer and appellant fell down stairs,[19] there was another portion of the report which provided the statement of an eyewitness who did not testify at trial. In the statement, the non-testifying witness reported seeing appellant get on top of the victim, hold her down, and punch her face five to ten times.[20] The non-testifying witness further stated that appellant unsuccessfully attempted to grab the officer's gun and then picked the officer up and threw her on the hood of her car.[21]

Following trial, appellant was convicted of four offenses. He later filed a rule 3.850 motion attacking his convictions and asserting his counsel was ineffective for introducing the police report. After holding a limited evidentiary hearing, the trial court agreed and vacated the convictions. The State appeals.

. . . .

---

[17] On cross-examination of Officer Willey, defense counsel introduced the police report as Defendant's Exhibit 1, and the court admitted it into evidence. See Tr. at 145-46.

[18] See Tr. at 143; Resp. Ex. A at 1-5, Arrest and Booking Report.

[19] See Resp. Ex. A at 2, Witness #3, Bridgette Eads' statement.

[20] See Resp. Ex. A at 3, Mrs. Eads' statement.

[21] See Resp. Ex. A at 3, Mrs. Eads' statement.

Applying the foregoing principles to the underlying case,[22] to establish prejudice appellant was required to show that the introduction of the police report was so prejudicial that there existed a reasonable probability the jury would have acquitted appellant of aggravated battery on a law enforcement officer and resisting an officer with violence if the report had not been admitted.

Given the overwhelming evidence of guilt introduced at trial, appellant cannot meet this burden. Specifically, the injured officer and an eye-witness testified that appellant punched the officer in the face at least three times. The injured officer testified that she was permanently disfigured as a result of appellant's actions, and photographs were admitted of these injuries. Two other officers testified appellant confessed to hitting the victim several times. Appellant, at trial, conceded he pushed and hit at the victim to get away. Given this overwhelming evidence of guilt, it could not be said [that] the information in the police report, which only served to corroborate the testimony of four other witnesses, could have reasonably changed the outcome of the proceeding. Accordingly, we reverse for reinstatement of appellant's convictions.

Dickson, 89 So.3d at 278-80. The court denied Dickson's motion for rehearing. Resp. Ex. Y.

There is a qualifying state court decision. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes

---

[22] The appellate court identified the two-part Strickland ineffectiveness test as the controlling law.

23

that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Dickson is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Dickson's claim is without merit because the record supports the state court's conclusion. As previously stated, since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong . . . ." Ward v. Hall, 592 F.3d at 1163 (citing Holladay, 209 F.3d at 1248). On this record, Dickson has failed to carry his burden of showing prejudice, as the second prong of the two-part Strickland test. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had not introduced the police report into evidence. Given the overwhelming evidence of guilt (including that Dickson testified and, in doing so, conceded that he pushed and hit at the victim to get away), "it [can]not be said [that] the information in the police report, which only served to corroborate the testimony of four other witnesses, could have reasonably changed the outcome of the proceeding." Dickson, 89 So.3d at 279-

80. Dickson's ineffectiveness claim is without merit since he has not shown any resulting prejudice. <u>See</u> Response at 30-38. Accordingly, Dickson is not entitled to federal habeas relief on ground 1(a).

## B. Grounds 1(b)-(e)

Dickson asserts that counsel was ineffective because he failed to: investigate and prepare for trial (ground 1(b)); research the applicable law and cite <u>State v. Taylor</u>, 740 So.2d 89 (Fla. 1st DCA 1999) (ground 1(c)); move to sever the charges involving the aggravated battery on the officer (counts one and two) from the possession of a firearm by a convicted felon and possession of cocaine charges (ground 1(d)); and request a jury instruction on the justifiable use of non-deadly force (ground 1(e)). <u>See</u> Petition at 5; Memorandum at 3-6. Additionally, he asserts that counsel failed to: renew his motion to suppress physical evidence at trial; conduct an adequate voir dire of the jury; adequately advise Dickson about whether he should testify at trial or not; and properly investigate issues related to the victim's injuries. <u>See</u> Memorandum at 1. Dickson raised these ineffectiveness claims in his Rule 3.850 motion in state court, and the circuit court held an evidentiary hearing concerning the claims, and ultimately denied the post-conviction motion with respect to these claims. Dickson did not appeal the trial court's denial as to these claims.

Respondents contend that the claims are procedurally barred since Dickson failed to appeal the trial court's denial. See Response at 40 ("Although petitioner raised these issues in his motion for postconviction relief, petitioner dismissed his cross-appeal in which he was appealing the portion of the circuit court's order denying the motion for postconviction relief. Because petitioner did not appeal [these claims] the exhaustion requirement was not satisfied."). On this record, the Court agrees that the claims have not been exhausted, and are therefore procedurally barred since Dickson failed to raise these claims in a procedurally correct manner. Dickson has not shown either cause excusing the default or actual prejudice resulting from the bar.[23] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Assuming that Dickson's claims are not procedurally barred, Dickson is not entitled to relief. As previously stated, Dickson raised these ineffectiveness claims in his Rule 3.850 motion. The post-conviction court ultimately denied the post-conviction motion as to these claims, stating in pertinent part:

---

[23] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S.Ct. at 1318 (citation omitted). As discussed in the alternative merits analysis that follows, these ineffectiveness claims lack any merit. Therefore, Dickson has not shown that he can satisfy an exception to the bar.

The motion raises eleven grounds of ineffective assistance of counsel, all of which are without merit save for Ground IX.[24]

. . . .

The fact that trial counsel did not move to sever the charge of Possession of a Firearm by a Convicted Felon is mooted by the fact that the defendant chose to testify. The jury was going to learn of the defendant's prior felony convictions, so severance would be a futile gesture.

Severing the other counts was a possible tactic that Mr. Martin discussed with the defendant, and they agreed between them to try the counts together, after Mr. Martin explained the defendant's options on this issue.[25] A decision to try these cases together, rather than to have multiple trials, can be a valid tactical decision. Brown v. State, 604 So.2d 20 (1DCA Fla. 1992). A valid tactical decision made by a knowing and willing defendant cannot be the subject of appellate review, so there was no issue to preserve.

The trial court's denial of defendant's motion to suppress the cocaine, firearms, and paraphernalia found in the defendant's backpack was a correct and legal decision.[26] There is no reasonable possibility that it would have been reversed on appeal.

---

[24] As ground nine, Dickson asserted that counsel failed to recognize the consequences of his actions when he introduced a police report into evidence which contradicted Dickson's trial testimony. See Resp. Ex. R at 33-34; see also supra Section VIII. A. Ground 1(a).

[25] See EH Tr. at 10-11, 30-31.

[26] See Tr. at 69 ("And Mr. Martin, I want to thank you very much for your -- the way you prepared this, especially your memorandum, it was very well done. I wish more people would do this kind of work."), 77-79; see also EH Tr. at 29-30.

Preservation of this issue would have been yet another meaningless gesture.

Defense counsel's <u>voir</u> <u>dire</u> met acceptable standards for effective assistance of trial counsel. His decision not to ask every question suggested by the movant herein was based upon reasonable tactical decisions, and did not constitute ineffective assistance of counsel.[27]

Defense counsel consulted frequently and thoroughly with his client.[28] The movant admitted at the evidentiary hearing that his lawyer had explained things these things to him, including the written stipulation signed by the defendant and any stipulations made by defense counsel in his argument to the jury. (Record of Evid. Hrg., pgs 68-70.)

Defense counsel at trial made repeated efforts to have the trial court take judicial notice of Florida Statute § 776.051(2) and to instruct the jury on justifiable use of nondeadly force. The trial court repeatedly denied these efforts. . . . .

The motions for judgment of acquittal raised in this case were adequate and competently done.[29]

The movant admitted in the evidentiary hearing that it was his decision to testify. (Record of Evid. Hrg. pg. 67.) Further, the very experienced trial judge in this case (not the undersigned) conducted a series of colloquies with the defendant, in which he advised the defendant of his right to remain silent, the Court's instruction to the jury relative to that right if the defendant chose not to testify, and the ramifications of his

---

[27] <u>See</u> EH Tr. at 42-47.

[28] <u>See</u> EH Tr. at 31-33.

[29] <u>See</u> Tr. at 169, 197.

decision to testify.[30] The Court gave the
defendant multiple opportunities to confer
with counsel after these dialogues with the
Court, and indeed took a recess for the
defendant to consider his choices, prior to
the defendant taking the stand. Even if trial
counsel had never discussed the defendant's
right to remain silent (which the record
herein conclusively shows is not the case),
the defendant was fully advised of his Fifth
Amendment privilege when he made the decision
to testify, and admitted so in the evidentiary
hearing. (Record of Evid. Hrg. pg. 67.)

Resp. Ex. S at 53, 56-58. Dickson did not appeal the trial court's
denial.

Given the record in the instant action, Dickson would not be
entitled to relief because the state court's adjudication of these
claims is entitled to deference under AEDPA. After a review of the
record and the applicable law, the Court concludes that the state
court's adjudication of these claims was not contrary to clearly
established federal law and did not involve an unreasonable
application of clearly established federal law. Nor was the state
court's adjudication based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceedings. Accordingly, Dickson is not entitled to relief on the
basis of these claims.

Even assuming that the state court's adjudication of these
claims is not entitled to deference, and that the claims present
sufficiently exhausted issues of federal constitutional dimension,

---

[30] See Tr. at 170-175; see also EH Tr. at 65-71.

Dickson's claims are, nevertheless, without merit. The record fully supports the trial court's conclusions. Even assuming arguendo deficient performance by defense counsel, Dickson has not shown prejudice. As previously stated, the State's evidence against Dickson was overwhelming, and Dickson admitted that he pushed and hit at the officer to get away from her. Therefore, Dickson's ineffectiveness claims are without merit since he has shown neither deficient performance nor any resulting prejudice. Dickson is not entitled to habeas relief on the basis of these ineffectiveness grounds. <u>See</u> Response at 42.

## IX. Certificate of Appealability<br>Pursuant to 28 U.S.C. § 2253(c)(1)

If Dickson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dickson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Dickson appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of October, 2015.


MARCIA MORALES HOWARD
United States District Judge


sc 9/28
c:
Kurt Aaron Dickson
Ass't Attorney General (Pate)